IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEHROUZ KAHLILY,                          )
                                          )
        Plaintiff,                        )      No. 08 C 1515
                                          )
    v.                                    )      Judge Kendall
                                          )
CHICAGO POLICE OFFICER,                   )      Mag. Ashman
R. FRANCIS, Star # 5276, CITY OF          )
CHICAGO, Illinois Municipal               )
Corporation,                             )
                                          )
        Defendants.                       )


**DEFENDANT CITY OF CHICAGO'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS COUNTS III, IV and VII OF PLAINTIFF'S COMPLAINT, AND
TO DISMISS ALL CLAIMS FOR PUNITIVE DAMAGES AGAINST INDIVIDUAL
DEFENDANT FRANCIS**

Defendant City of Chicago ("City"), by and through its attorney, Mara S. Georges,

Corporation Counsel for the City of Chicago, respectfully moves this Court, pursuant to Rule

12(b)(6), to dismiss Counts III ("Violation of Property Rights"), IV ("Equal Protection"), and VII

(untitled) of Plaintiff's Complaint of the Federal Rules of Civil Procedure for failure to state a claim

and to dismiss all claims for punitive damages against Individual Defendant R. Francis ("Officer

Francis") because a claim for punitive damages does not survive the death of a defendant.


## STATEMENT OF FACTS

This lawsuit stems from a traffic stop. Plaintiff filed his Complaint on March 13, 2008,

against the City and Officer Francis and alleges on April 11, 2007, at approximately 2:00 a.m., he

made a lawful left turn in his taxicab when Officer Francis "drove his squad roll behind the Plaintiff,

activated his emergency lights, and pulled the Plaintiff over." (Pl. Cmplt. ¶ 7-8, hereinafter cited as

Docket Entry "D.E." 1). Officer Francis was killed in the line of duty on July 2, 2008, and the

record of his death was spread on July 9, 2008. (D.E. 13).

According to Plaintiff, following the retrieval of his driver's license from the trunk of the

taxicab, he "inquired as to why he had been stopped and why [Officer Francis] always harasses

him." (D.E. 1, ¶ 11). In response, Officer Francis "grabbed" Plaintiff's left arm, twisted it,

handcuffed him, and "deliberately squeezed the handcuffs harder" and placed Plaintiff into the

squad roll. (D.E. 1, ¶ 12). In his Complaint, Plaintiff alleges he recognized Officer Francis as a

police officer who "has repeatedly harassed" Plaintiff and has "issued the Plaintiff citations when the

officer had no probable cause to believe that the Plaintiff had committed any offense." (D.E. 1, ¶

9). Plaintiff alleges Officer Francis "refused to allow the Plaintiff to retrieve his cell phone, keys,

and money from the taxi and the Plaintiff was forced to leave the taxi as it sat, unsecure and

running." (D.E. 1, ¶ 13). Plaintiff alleges that he was taken to the 019th District [Belmont and

Western], handcuffed to a wall, and eventually issued traffic citations for the traffic offenses, when

he had committed no offense." (D.E. 1, ¶ 14). Following the issuance of the traffic citations,

Plaintiff claims Officer Francis "continued to detain the Plaintiff at the police station by refusing to

return the Plaintiff's car keys." (D.E. 1, ¶ 15).[1] Following his release, Plaintiff alleges his money and

cell phone were missing. (D.E. 1, ¶¶ 16-17). Plaintiff seeks compensatory damages, punitive

damages, costs and attorney's fees in relation to all his claims. (D.E. 1, *passim*)

## SUMMARY OF ARGUMENT

Count III ("Violation of Property Rights") should be dismissed because there has been no

Fifth Amendment taking under the facts alleged in Plaintiff's Complaint and Plaintiff has not

exhausted state law remedies. Court IV ("Equal Protection") should be dismissed because the equal

protection class-of-one theory does not apply to Plantiff's arrest. Count VII should be dismissed

---

[1] It is unclear to what car the keys relate as Plaintiff alleges that his taxi was left "unsecure and running."

because there is no such tort as "willful and wanton" conduct.  Finally, all claims for punitive

damages against Officer Francis should be dismissed because a claim for punitive damages does not

survive the death of the Defendant.

## I.    COUNT III (VIOLATION OF PROPERTY RIGHTS) SHOULD BE DISMISSED BECAUSE THERE HAS BEEN NO FIFTH AMENDMENT TAKING

Plaintiff apparently alleges that Officer Francis's conduct constituted a violation of the Takings

Clause of the Fifth Amendment because, as Plaintiff contends, "the actions of Defendant Francis

caused the loss or destruction of the Plaintiff's property without just compensation."  (D.E. 1, ¶ 28)

The Fifth Amendment, in relevant part, restrains government from taking a citizen's private

property for public use absent just compensation.  Plaintiff has not alleged any property was taken

for pubic use and instead claims that property was stolen because of Officer Francis's conduct.

Simply put, this is not a taking and does not evoke the parameters of the Fifth Amendment Takings

Clause.  Moreover, Plaintiff has failed to exhaust state law remedies, as is required to set forth a

Takings Claim.  *See, e.g., Gates v. Towery*, 331 F. Supp. 2d 666, 672 (N.D. Ill. 2004) (J. Castillo); *see also*

*Slaughter v. Anderson*, 673 F. Supp. 929, 930 (N.D. Ill. 1987) (J. Shadur).  Count III should be

dismissed.

## II.   COUNT IV (EQUAL PROTECTION) SHOULD BE DISMISSED BECAUSE THE EQUAL PROTECTION CLASS-OF-ONE THEORY DOES NOT APPLY TO PLAINTIFF'S ARREST

The class-of-one theory of equal protection liability principally derives from the Supreme

Court's *per curiam* decision in *Village of Willowbrook v. Olech* 528 U.S. 562 (2000).  The case arose out

of a dispute between a property owner and the village over the requirements for an easement.  *Olech*,

528 U.S. at 563.  The property owners, not members of any suspect class or group, claimed that the

village's demand upon them was greater than every other property owner and as such the demand

deprived them of the equal protection of the law.  *Id.* at 564.  The Supreme Court held that an equal

protection "class of one" claim may proceed without membership of a class or group where the

"plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564.

Following *Olech*, the Seventh Circuit has struggled to define the precise contours of a class-of-one cause of action. *See, Lauth v. McCollum*, 424 F.3d 631, 632-33 (7th Cir. 2005) (J. Posner); *see also Bell v. Duperrault*, 367 F.3d 703, 709-11 (7th Cir. 2004) (J. Posner concurring) (noting the lack of clarity following the *Olech* decision and the varying lines of authority set forth by the several circuits). In attempting to reign in the potential breadth of the class-of-one claim, the Seventh Circuit established that where a rational or legitimate reason may be <u>hypothesized</u>, an equal protection "class of one" claim fails as a matter of law. *McCollum*, 424 F.3d at 634 (holding that a class-of-one plaintiff must surpass rational scrutiny and negative any reasonably conceivable state of facts that could provide a rational basis for the government action). The complained of action "only fails rational basis scrutiny if no sound reason for the action can be hypothesized." *Id.* at 634. (citations omitted). In stating such, the Seventh Circuit sanctioned the disposal of class-of-one claims in Rule 12(b)(6) motions "[s]ince hypothesis is not proof, this test that we have articulated can often be applied in advance of discovery. *Id.* (citations omitted).

Recognizing the theoretical and practical problems associated with the equal protection class-of-one claim, the Supreme Court recently addressed the class-of-one theory in the public employer context. *See Enquist v. Oregon Dep't of Agriculture*, 128 S.Ct. 2146 (U.S. 2008). In *Enquist*, the Supreme Court reasoned that *Olech* was more an application of the Equal Protection Clause's guarantee of freedom from arbitrary government classification than an exception to the requirement for suspect classification. *See Enquist*, 128 S.Ct. at 2153. The Supreme Court held that the core concerns of the Equal Protection Clause are not implicated in disputes inherently circumscribed by the discretionary exercise of the state's authority to fire an employee. *Id.* at 2153-57 (holding the

4

class-of-one theory does not apply in the public employment context). The reasoning in *Enquist*

fully applies to eliminate the application of the class-of-one theory to Plaintiff's case.

The situation the Supreme Court specifically pointed out in ruling that the equal protection

class-of-one theory does not apply to the subjective, individualized determinations of state actors in

their decision to exercise discretionary authority was the hypothetical arbitrary traffic stop. *See*

*Enquist*, 128 S.Ct. at 2154-55. The Supreme Court made clear that the Constitution envisions

differential treatment in the exercise of the discretionary power to search and seize:

> [t]here are some forms of state action, however, which by their nature involve
> discretionary decisionmaking based on a vast array of subjective, individualized
> assessments. In such cases the rule that people should be "treated alike, under like
> circumstances and conditions" is not violated when one person is treated differently
> from others, because treating like individuals differently is an accepted consequence
> of the discretion granted. In such situations, allowing a challenge based on the
> arbitrary singling out of a particular person would undermine the very discretion that
> such state officials are entrusted to exercise.

*Enquist*, 128 S.Ct. at 2154 (discussing the inherent problems with equal protection analysis in

discretionary decision making through illustration of a police officer issuing traffic tickets). Simply

put, Plaintiff's equal protection claim has been foreclosed by the Supreme Court and should be

dismissed.

## III.   COUNT VII (UNTITLED) SHOULD BE DISMISSED BECAUSE ILLINOIS LAW DOES NOT RECOGNIZE A TORT OF WILLFUL MISCONDUCT

In Count VII, untitled, Plaintiff alleges Officer Francis failed duties to secure Plaintiff's taxi

and not act willfully, wantonly or maliciously and "willfully, wantonly and with utter disregard for

the property rights of the Plaintiff left the taxi and its contents on the side of the road unsecured

and refused to allow the ." (D.E. 1, ¶¶ 47-48). Count VII VII is essentially a claim for the tort of

willful misconduct on the part of Officer Francis.

Under Illinois law, it is well established that there is no separate and independent tort of

willful misconduct. *See Ziarko v. Soo Line R.R.*, 161 Ill. 2d 267, 641 N.E.2d 402, 406 (Ill. 1994)

("[t]here is no separate and independent tort of 'willful and wanton' misconduct") (citations

omitted); *see also Sparks v. Sparks*, 367 Ill.App.3d 834, 856 N.E.2d 575, 578-79 (Ill. App. Ct. 2006) (1st

Dist.) (holding no independent tort of willful and wanton misconduct).  Because there is no

cognizable willful misconduct cause of action under Illinois law, Count VII should be dismissed for

failure to state a claim under Rule 12(b)(6).

## IV. ALL CLAIMS FOR PUNITIVE DAMAGES RELIEF MUST BE DISMISSED AND STRICKENT BECAUSE A PUNITIVE DAMAGES CLAIM DOES NOT SURVIVE THE DEATH OF A DEFENDANT

In each of his successive counts I – VII Plaintiff prays from punitive damages against

Officer Francis.  As spread of record, Officer Francis is deceased.  While it appears the Illinois

Supreme Court has not yet opined on whether a punitive damages claim survives the death of the

tortfeasor, at least two Courts in this district have dismissed punitive damages claims against a

deceased tortfeasor.  In each case, the Court predicted that Illinois would follow the majority rule

and hold that punitive damages cannot be imposed against the estate of deceased tortfeasors.  *See*

*Stafford v. Purofied Down Products Corp.*, 801 F. Supp. 130, 132 (N.D. Ill. 1992) (J. Norgle) (dismissing

punitive damages claim against deceased tortfeasor predicting "that Illinois's high court would most

likely follow the majority view and hold that punitive damages cannot be imposed against the estates

of deceased tortfeasors."); *Ingram v. Hall Roach, Johnston, Fisher, Bollman*, No. 95 C 0550, 1995 WL

765331, *1, 5 (N.D. Ill. Dec. 27, 1995) (J. Holderman) (dismissing punitive damages claim upon

finding that punitive damages claim does not survive the death of the tortfeasor), attached hereto as

Exhibit A.  The policy underscoring punitive damages (to punish a tortfeasor in order to deter

conduct of a similar nature in the future) is plainly not served in this case.  As such, the majority rule

should be applied and all punitive damages claims should be dismissed from this case and stricken

from the pleading.

**WHEREFORE**, Defendant, City of Chicago, respectfully requests the following relief:

➢ Dismiss Count III ("Violation of Property Rights") with prejudice;
➢ Dismiss Count IV ("Equal Protection") with prejudice;
➢ Dismiss Count VII (untitled) with prejudice;
➢ Dismiss All Claims for Punitive Damages with prejudice;
➢ Require Plaintiff to Submit an Amended Complaint reflecting the dismissal of the claims;
➢ Grant whatever other relief the Court deems just and proper.

DATED: August 8, 2008

Respectfully submitted,

City of Chicago

Mara S. Georges
Corporation Counsel

By: _/s/ Christopher A. Wallace_
        Christopher A. Wallace
Assistant Corporation Counsel
*Attorney for Defendant City of Chicago*

City of Chicago Department of Law
30 N. LaSalle Street
Suite 1400
Chicago, Illinois 60602
T: (312) 742-6408
F: (312) 744-6566
ARDC # 6278655

## CERTIFICATE OF SERVICE

I, Christopher Wallace, hereby certify that on August 8, 2008, I served a true and correct copy of Defendant City of Chicago's Motion to Dismiss Counts III, IV and VII of Plaintiff's Complaint and To Dismiss All Claims for Punitive Damages Against Individual Defendant Francis by filing the same before the Court via the ECF system.

_/s/ Christopher Wallace_
Christopher Wallace

# EXHIBIT A

Not Reported in F.Supp.

Page 1

Not Reported in F.Supp., 1995 WL 765331 (N.D.Ill.)

**1995 WL 765331 (N.D.Ill.)**

**H**

Ingram v. Hall, Roach, Johnston, Fisher, Bollman
N.D.Ill.,1995.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Alvin INGRAM, Plaintiff,
v.
HALL, ROACH, JOHNSTON, FISHER, BOLL-
MAN, Mary Jen Fisher, Independent Administrator,
as Executor of the Estate of Ned L. Fisher, Henry
D. Fisher, Edward R. Holberg, Jr., Robert L.
Snook, Albert L. Hall, Jr., John R. Sloan, Michael
L. Roach, Jay J. Johnston, Edward A. Puisis,
Robert E. Lessman, Kirk L. Miller, Donald L. Sad-
owski, Robert Bollman and C. Jeffrey Thut, De-
fendants.
**No. 95 C 0550.**

Dec. 27, 1995.

*MEMORANDUM OPINION AND ORDER*

HOLDERMAN, District Judge:
**\*1** Plaintiff, Alvin Ingram, filed a two count com-
plaint against defendants alleging professional neg-
ligence/attorney malpractice and requesting punit-
ive damages and prejudgment interest. Pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Proced-
ure, defendants have filed a motion to dismiss
plaintiff's claims for punitive damages and prejudg-
ment interest. For the following reasons, defend-
ants' motion is denied in part and granted in part.

*BACKGROUND*

Plaintiff alleges that in 1977 he became perman-
ently disabled. Plaintiff had been president and sole
shareholder of Kuch & Ingram, Inc., a construction
firm whose principal place of business was in Lake
County, Illinois.

Prior to his disability, plaintiff claims that he had
attempted to secure disability insurance by retain-
ing an independent insurance broker, Elwyn F.
Wightman. According to plaintiff, Wightman negli-
gently breached his duties, in part, by not forward-
ing insurance premiums for disability insurance and
failing to procure substitute disability insurance
coverage for the plaintiff.

In 1978, plaintiff retained defendants to pursue his
alleged claims against Wightman. According to
plaintiff, defendants failed to file a lawsuit against
Wightman and/or the insurance companies that
denied disability coverage to plaintiff, and that the
statute of limitations for filing such a claim has ex-
pired.

Plaintiff alleges that over the course of 16 years,
the defendants deceived plaintiff and concealed de-
fendants' alleged misconduct. According to
plaintiff, defendants falsely informed the plaintiff
that they had filed suit and obtained a $900,000
judgment against Wightman. Plaintiff claims that in
an effort to deceive plaintiff, in 1994, defendants
paid approximately $95,000.00 to plaintiff and rep-
resented that these were funds in partial satisfaction
of the judgment they had obtained on his behalf. In
addition, plaintiff alleges that defendants provided
plaintiff with forged and phony documents that pur-
ported to be court orders relating to the judgment
they had obtained.

In September 1994, plaintiff alleges that he first
discovered that defendants had failed to file any
lawsuit on his behalf and that defendants had inten-
tionally deceived and concealed their negligence
and breaches of fiduciary duty. Plaintiff filed this
lawsuit in January, 1995.

*ANALYSIS*

In ruling on a motion for dismissal, the court must
presume all of the well-pleaded allegations of the
complaint to be true. *Miree v. DeKalb County,* 433
U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2 (1977). In

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 765331 (N.D.Ill.)
**1995 WL 765331 (N.D.Ill.)**

addition, the court must view those allegations in the light most favorable to the plaintiff. *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). Dismissal is proper only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957).

*I. Punitive Damages*

**\*2** Defendants argue that plaintiff is barred from claiming punitive damages in this legal malpractice action according to section 2-1115 of the Illinois Code of Civil Procedure (the "Act").FN1    Section 2-1115 states that:

In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal, medical, hospital or other healing art malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed.

735 ILCS ¶ 5/2-1115. Because the effective date of the Act is August 15, 1985, 735 ILCS 5/2-114, and the complaint was not filed until January 1995, defendants assert that plaintiff cannot claim punitive damages.

Plaintiff argues, however, that the Act does not bar the potential recovery of punitive damages in this case because defendants' conduct falls outside the scope of an attorney-client relationship. According to plaintiff, the numerous fraudulent acts committed by the defendants go beyond legal malpractice and are therefore not covered under the Act.

The Illinois Supreme Court has not yet addressed the issue of whether conduct, as alleged in this case, is outside the scope of the Act. When there is no state statute or precedent that directly controls, the court must predict how the case would be decided if presented to the Illinois Supreme Court. *Ross v. Creighton University,* 957 F.2d 410, 413 (7th Cir.1992).

The Illinois Appellate Court, however, did resolve this issue in *Calhoun v. Rane,* 234 Ill.App.3d 90, 599 N.E.2d 1318, 175 Ill.Dec. 304 (1st Dist.1992). In *Calhoun,* plaintiff retained defendant Rane to represent him before the Illinois Industrial Commission in regard to injury claims that arose from Calhoun's employment. Plaintiff alleged that Rane allowed Calhoun's petitions to be dismissed for want of prosecution and Rane failed to inform plaintiff of the dismissal causing Calhoun to lose his worker compensation cause of action. Plaintiff also claimed that two and one half years after the dismissal, Rane wrote a letter to Calhoun asserting that the complaint was still pending and that there was an offer of settlement.

The trial court in *Calhoun* dismissed plaintiff's punitive damages claim. On appeal, Calhoun argued that defendant's wilful and wanton acts "did not arise out of the provision of legal services" and therefore, punitive damages were not prohibited by section 2-1115. *Calhoun,* 599 N.E.2d at 1322, 175 Ill.Dec. at 308. Specifically, Calhoun argued that: 1) the acts for which he sought punitive damages were separated in time from Rane's initial malpractice by two and one half years; 2) Rane's offer of money was an attempt to buy his way out of his malpractice and conceal his wrongdoing, and; 3) in offering "hush money," Rane was performing illegal services for himself rather than legal services for plaintiff.

The Illinois Appellate Court in *Calhoun* found that the allegations of wilful and wanton conduct were related to the original acts of professional malpractice and thus barred by section 2-1115. The court noted that, aside from the lapse in time, Calhoun did not allege any facts that would serve to sufficiently break the continuity of the original malpractice.

**\*3** Based on the reasoning in *Calhoun* and other Illinois Appellate decisions and the language of the Act, this court predicts that the Illinois Supreme Court would find that conduct arising out of the alleged malpractice or sufficiently related to the mal-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 765331 (N.D.Ill.)
**1995 WL 765331 (N.D.Ill.)**

practice falls within the purview of section 2-1115. *See Safeway Insurance Co. v. Spinak,* 267 Ill.App.3d 513, 641 N.E.2d 834, 837, 204 Ill.Dec. 404, 407 (1st Dist.1994) (stating that section 2-1115 is broad enough to encompass any acts arising out of the provision of legal services); *Williams v. Chicago Osteopathic Medical Center,* 173 Ill.App.3d 125, 527 N.E.2d 409, 122 Ill.Dec. 911 (1st Dist.1988) (holding that section 2-1115 applied to intentional fraud arising from the provision of medical services by health care providers).

This case, as in *Calhoun,* is based on allegations of legal malpractice. The allegedly wilful and wanton acts of defendants arose out of the original acts of professional malpractice. The only difference between this case and the circumstances in *Calhoun,* is the length of time of the alleged cover-up and the amount of money offered plaintiff. It is clear that the alleged facts in this case are more egregious than in *Calhoun.* The fact, however, that the allegations in this case are more egregious than in *Calhoun* does not alter the court's conclusion that section 2-1115 applies. In addition, this court agrees with the *Calhoun* court that although the allegations against defendant attorneys are extremely serious and the court does not condone the alleged actions, making an exception to section 2-1115 needs to be addressed by the State legislature.

This case, however, has an unprecedented, unique timing sequence that raises a problem separate from the issues decided in *Calhoun.* Plaintiff alleges that he retained the services of defendants in 1978 and that the statute of limitations ran on his underlying cause of action against the insurance agent in 1983.FN2 The effective date of the Act, however, is August 15, 1985. Plaintiff argues that defendants' alleged concealment and deception induced the plaintiff to forego the pursuit of his malpractice claims until after section 2-1115 was enacted.

Although not exactly the same, the effective date of the Act is analogous to a statute of limitations period. A plaintiff, in Illinois, had up to and including August 14, 1985 to file a legal malpractice claim

and request punitive damages. In effect, the plaintiff in this case is requesting that the time period from when he was injured (the time the statute of limitations ran against the insurance agent defendant in 1983) to the effective date of the Act be suspended or tolled.

Equitable estoppel is a doctrine that permits the running of the statute of limitations to be suspended during any period in which the defendant took active steps to prevent the plaintiff from suing. *Singletary v. Continental Illinois National Bank and Trust Co.,* 9 F.3d 1236, 1241 (7th Cir.1993). According to Illinois law, equitable estoppel "refers to reliance by one party on the word or conduct of another so that the party changes his position and subsequently suffers harm. It arises whenever one by his conduct, affirmative or negative, intentionally or through culpable negligence, induces another to believe and have confidence in certain material facts, and the latter having the right to do so, relies and acts thereon, and is as a reasonable and inevitable consequence, misled to his injury." *Gary-Wheaton Bank v. Meyer,* 130 Ill.App.3d 87, 473 N.E.2d 548, 85 Ill.Dec. 180, 186-87 (2d Dist.1985); *Vaughn v. Speaker,* 126 Ill.2d 150, 162-63, 533 N.E.2d 885, 127 Ill.Dec. 803, 808 (1988), *cert. denied,*492 U.S. 907 (1989).

*4 The six elements of equitable estoppel, according to the Illinois Supreme Court, are: 1) defendant undertook words or conduct that amounted to a misrepresentation or concealment of material fact; 2) defendant knew, or had reason to know, the falsity of his misrepresentation or concealment; 3) plaintiff did not know, or have reason to know, that defendant's misrepresentation or concealment was false; 4) defendant intended, or reasonably expected, that plaintiff would detrimentally rely on defendant's misrepresentation or concealment; 5) plaintiff's detrimental reliance was reasonable and in good faith; and 6) plaintiff would be prejudiced if defendant were permitted to avoid the falsity of his misrepresentation or concealment. *Vaughn v. Speaker,* 126 Ill.2d at 162.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

In this case, plaintiff's alleged facts, taken as true, clearly establish the elements of the doctrine of equitable estoppel. According to plaintiff, over a period of 16 years defendants intentionally and falsely informed plaintiff that they had filed suit and obtained a $900,000 judgment against Wightman. According to the allegations, plaintiff had no way of knowing defendants misrepresentations were false and plaintiff was reasonable in his reliance especially due to the nature of the attorney-client relationship. In this case, plaintiff would be highly prejudiced because plaintiff could have filed this suit between 1983 and August 15, 1985 and requested punitive damages if defendants had not concealed the malpractice.

The doctrine of equitable estoppel applies to the allegations in this case and therefore suspends the time period in which plaintiff had the opportunity to file a claim for punitive damages based on legal malpractice. Plaintiff was allegedly injured in 1983 when he lost his cause of action against the insurance agent and could have filed a suit against defendants claiming punitive damages up until August 15, 1985, the effective date of the Act. Therefore, plaintiff had at least one and one half years to file a claim against defendants for punitive damages.

Based on the doctrine of equitable estoppel, the one and one half year period is suspended and does not begin to run until the date when plaintiff actually learned of his injury. Plaintiff alleges to have learned of his injury in September, 1994 and filed suit in January of 1995 which is clearly within the one and one half year period allowed him under the doctrine of equitable estoppel to file a claim for punitive damages. Therefore, plaintiff's alleged claim for punitive damages should properly be allowed to proceed.

*A. Defendants Bollman and Thut*

Punitive damage claims against defendants Bollman and Thut, however, will not be allowed. Based on the plaintiff's allegations, Bollman and Thut did not become partners in the defendant law firm until 1992 and 1993, respectively. Because of this, there are no alleged actions of misrepresentations by these defendants that prevented plaintiff from knowing of his injury prior to August 15, 1985. Therefore, the doctrine of equitable estoppel cannot apply to these two defendants because any alleged actions of misrepresentation by Bollman and Thut had to have occurred after 1985.

*B. Defendant Ned Fisher's Estate*

**\*5** According to plaintiff's complaint, Ned Fisher died on September 6, 1994 and Mary Jen Fisher was appointed Independent Administrator of his estate. Because it has not been addressed by Illinois statute or court opinion, this court must predict how the Illinois Supreme Court would rule on the issue of whether punitive damages are recoverable from the estate of a deceased tortfeasor under Illinois law.

In *Loitz v. Remington Arms Co., Inc.,* 138 Ill.2d 404, 414, 563 N.E.2d 397, 401, 150 Ill.Dec. 510, 514 (1990), the Illinois Supreme Court stated that "punitive, or exemplary, damages are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from similar acts of wrongdoing in the future." Because of the penal nature, punitive damages are not favored in the law. *Deal v. Byford Motorola, Inc.,* 127 Ill.2d 192, 203, 537 N.E.2d 267, 130 Ill.Dec. 200 (1989).

When the tortfeasor is deceased, however, there no longer is a need to punish the offender and imposing punitive damages unfairly places the burden of such damages upon the deceased's heirs. For these reasons, other jurisdictions have rejected imposing punitive damages against a deceased tortfeasor's estate. *Doe v. Colligan,* 753 P.2d 144, 145-46 (Alaska 1988) (listing courts that have refused to award punitive damages against a deceased tortfeasor's estate); *Lohr v. Byrd,* 522 So.2d 845, 846-47 (Fla.1988); *Evans v. Gibson,* 220 Cal. 476, 489-90, 31 P.2d 389 (1934).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 765331 (N.D.Ill.)
**1995 WL 765331 (N.D.Ill.)**

This court agrees with the decision in *Stafford v. Purofield Down Products Corp.,* 801 F.Supp. 130, 132 (N.D.Ill.1992) (J., Norgle), predicting that the Illinois Supreme Court would most likely follow the majority and hold that punitive damages cannot be imposed against the estates of deceased tortfeasors. Therefore, plaintiff's punitive damages claim against defendant Mary Jen Fisher, Independent Administrator, as Executor of the Estate of Ned L. Fisher is dismissed.[FN3]

*II. Prejudgment Interest*

Plaintiff in his prayer for relief seeks damages from defendants for prejudgment interest. Defendants argue that plaintiff is not entitled to this relief as a matter of law.

In Illinois, a plaintiff is not entitled damages for prejudgment interest in cases at law absent a statute or an agreement authorizing such an award. *Wilson v. Cherry,* 244 Ill.App.3d 632, 612 N.E.2d 953 (1993). Under the Illinois interest statute, there are four distinct instances in which prejudgment interest is allowed: 1) on money lent or advanced for the use of another; 2) on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; 3) on money received to the use of another and retained without the owner's knowledge; and 4) on money withheld by an unreasonable and vexatious delay of payment. 850 ILCS 205/2.

Plaintiff argues that prejudgment interest is allowable in this case because monies were withheld from him by the unreasonable and vexatious delay of the defendants. Conduct that amounts to fraud, imposes obstacles in the way of collection or other bad faith inducements meant to delay collection, are considered to be unreasonable and vexatious delays under the statute. *G.M. Sloan Mosaic & Tile Co. v. Newman/Lustig & Assocs.,* 199 Ill.App.3d 518, 557 N.E.2d 403, 407, 145 Ill.Dec. 633, 637 (1st Dist.1990); *Frank Novak & Sons, Inc. v. Sommer & Maca Industries, Inc.,* 182 Ill.App.3d 781,

131 Ill.Dec. 335 (1st Dist.1989); *cf. The Chicago Housing Authority v. GAB Business Services, Inc.,* 1995 WL 337070 at *6 (N.D.Ill. June 1, 1995).

**\*6** In this case, plaintiff alleges that defendants over a period of 16 years fraudulently advised plaintiff that a lawsuit had been filed, a $900,000 judgment had been entered in favor of the plaintiff, and collection activity was ongoing. At this stage of the case, it cannot be determined as a matter of law that this alleged conduct does not constitute an unreasonable and vexatious delay according to the Illinois interest statute. The plaintiff has alleged a sufficient set of facts that could demonstrate the necessity for prejudgment interest and therefore, the motion to dismiss this request for relief is denied.

*CONCLUSION*

For these reasons, defendants' motion to dismiss is DENIED IN PART AND GRANTED IN PART. The punitive damage claims against defendants Robert Bollman, Jeffrey Thut, and Mary Jen Fisher, Independent Administrator, as Executor of the Estate of Ned L. Fisher are dismissed. The remaining defendants are subject to the request for punitive damages. Defendants' motion to dismiss plaintiff's request for prejudgment interest is denied.

> FN1. This case is in federal court based on diversity jurisdiction and therefore, this court is required to apply the substantive law of Illinois. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487 (1941); *Jean v. Dugan,* 20 F.3d 255, 260 (7th Cir.1994).

> FN2. *Plaintiff's Complaint,* ¶ 16; *Plaintiff's Response,* p. 1.

> FN3. The remaining defendants argue that the punitive damages request against them should also be dismissed since they are only liable vicariously through Ned Fisher. First, the complaint does not allege that the remaining partner defendants are liable vicariously. The complaint states that all de-

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 765331 (N.D.Ill.)
**1995 WL 765331 (N.D.Ill.)**

fendants failed to inform plaintiff that no claim was filed on his behalf. Second, a request for punitive damages is not a cause of action, rather it is a form of relief. Simply because the relief cannot be imposed on Ned Fisher's estate does not eliminate the partner's liability for the actions and conduct of Ned Fisher.

N.D.Ill.,1995.

Ingram v. Hall, Roach, Johnston, Fisher, Bollman

Not Reported in F.Supp., 1995 WL 765331 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.