### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BEHROUZ KAHLILY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 1515 |
| | ) | |
| v. | ) | Judge Kendall |
| | ) | |
| CHICAGO POLICE OFFICER, | ) | Mag. Ashman |
| R. FRANCIS, Star # 5276, CITY OF | ) | |
| CHICAGO, Illinois Municipal | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

---

### DEFENDANT CITY OF CHICAGO'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS COUNTS III, IV and VII OF PLAINTIFF'S COMPLAINT, AND TO DISMISS ALL CLAIMS FOR PUNITIVE DAMAGES AGAINST INDIVIDUAL DEFENDANT FRANCIS

---

Defendant City of Chicago ("City") has moved to dismiss Counts III, IV, and VII as well as the punitive damages claims.  First, this is not a takings case under the Fifth Amendment; Count III fails as a matter of well-established constitutional precedent.  Second, the equal protection class of one theory does not apply to Plaintiff's arrest; therefore, Count IV fails as a matter of law.  Third, city employees are not liable for mere negligent acts and Illinois law does not recognize a stand alone claim for "willful and wanton" conduct.  Therefore, Count VII fails as a matter of Illinois law.  Finally, the punitive damages claims do not survive the death of Officer Francis and all claims for such should be dismissed and stricken from the Complaint.  Plaintiff's arguments in his response brief are addressed in turn.

### I.  PLAINTIFF HAS NOT STATED A FIFTH AMENDMENT TAKINGS CLAIM

Plaintiff argues Count III states a claim.  (Pl. Resp. "Docket Entry, D.E." 19, p. 1-3).  Count III of the Complaint is entitled "violation of property rights", and claims Officer Francis "caused the loss or destruction of the Plaintiff's property rights without just compensation …and

proximately caused violation of the Plaintiff's 5th and 14th Amendment rights …" (Pl. Complt., D.E. 1, ¶¶ 28-29). The Fifth Amendment takings clause states, in relevant part, as follows: "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend V. Plaintiff argues that his claim survives because he is entitled to plead in the alternative and that "[a]t this phase of the litigation the plaintiff does not know if Francis converted his property, left to be stolen or put it to some governmental use, and the plaintiff should be allowed to press forward with discovery …" Initially, discovery need not be undertaken if the property was either converted by Officer Francis or left to be stolen since both scenarios, if assumed to be true, do not violate the Fifth Amendment by its plain language because Officer Francis would not have taken property for public use. It is the last scenario that Plaintiff must be relying on to salvage this claim. Plaintiff did not refute, distinguish or ever discuss any of the cases cited by the City to sustain his claim. The point of a motion to dismiss is to determine whether the complaint at a minimum contains facts sufficient to state a claim as a matter of law. *See, e.g., Fries v. Harper*, 146 F.3d 452, 457 (7th Cir. 1998). "The Constitution does not forbid government to take private property for public use, it merely requires that, if it does so, it pay the owner just compensation." *Rockstead v. City of Crystal Lake*, 486 F.3d 963, 965 (7th Cir. 2007) (holding a property owner's Fifth Amendment right to just compensation is not infringed unless state remedies are exhausted); see also O'hara v. O'Donnell, No. 98 C 979, 2001 WL 290416, *1-2 (N.D. Ill. March 21, 2001) (J. Darrah) (dismissing Fifth Amendment claim where adequate state remedies exist), attached hereto as Exhibit A. As set forth in the City's motion, Plaintiff has failed to exhaust state remedies.

In short, Plaintiff has not alleged that the government took his property for public use without just compensation, has not alleged he has exhausted state remedies, has failed to distinguish or discuss the authorities cited by the City and has failed to explain at a bare minimum how this is a takings case. Count III should be dismissed.

**II.   COUNT IV FAILS BECAUSE THE EQUAL PROTECTION CLASS OF ONE THEORY DOES NOT APPLY TO PLAINTIFF'S CASE**

Plaintiff argues he has "stated a claim for an equal protection class of one violation" and reiterates that Plaintiff has tracked the operative language of the cause of action and that Officer Francis's decision to seize him was based upon "illegitimate animosity." (D.E. 19, p. 1-2). While it is true, as plaintiff points out, that the present case does not involve public employment, the reasoning employed in *Enquist* applies on all fours to this case. Plaintiff fails to address the reasoning employed in *Enquist* and, moreover, Plaintiff fails to address *Lauth v. McCollum*, and the fact that legitimate reasons may be hypothesized regardless of his argument that "[n]o legitimate government function is served by harassment of the plaintiff." (D.E. 19, at p.2). The City's reliance on *Enquist* is squarely on point. Indeed, the Supreme Court illustrated its reasoning in foreclosing the application of the class-of-one claim through the hypothetical traffic officer stopping and issuing tickets; the precise context of this case. Plaintiff's relies on *Esmail* and *Forseth* to support his claim. *Esmail* involved a dispute between the mayor and a business owner over the issuance of liquor licenses and whether the mayor could legitimately withhold the license. *Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995). *Forseth* involved a dispute over plat surveys and whether the conditioning of approval by a governing board was a legitimate exercise of governmental power. *Forseth v. Village of Sussex*, 199 F.3d 363, 370-71 (7th Cir. 2000). Both cases were decided before *Lauth v. McCollum* and *Enquist* and neither support Plaintiff's application of the class-of-one theory to this case.

### *Purpose of the Equal Protection Class-of-One Claim*

The class-of-one theory of equal protection liability principally derives from the Supreme Court's *per curiam* decision in *Village of Willowbrook v. Olech* 528 U.S. 562 (2000). The case arose out of a dispute between a property owner and the village over the requirements for an easement. *Olech*, 528 U.S. at 563. The property owners, not members of any suspect class or group, claimed that the village's demand upon them was greater than every other property owner and as such the demand

deprived them of the equal protection of the law. *Id.* at 564. The Supreme Court held that an equal protection "class of one" claim may proceed without membership of a class or group where the "plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564.

Following *Olech*, the Seventh Circuit has struggled to define the precise contours of a class-of-one cause of action. *See*, *Lauth v. McCollum*, 424 F.3d 631, 632-33 (7th Cir. 2005) (J. Posner); *see also Bell v. Duperrault*, 367 F.3d 703, 709-11 (7th Cir. 2004) (J. Posner concurring) (noting the lack of clarity following the *Olech* decision and the varying lines of authority set forth by the several circuits). In attempting to reign in the potential breadth of the class-of-one claim, the Seventh Circuit established that where a rational or legitimate reason may be hypothesized, an equal protection "class of one" claim fails as a matter of law. *McCollum*, 424 F.3d at 634 (holding that a class-of-one plaintiff must surpass rational scrutiny and negative any reasonably conceivable state of facts that could provide a rational basis for the government action). The complained of action "only fails rational basis scrutiny if no sound reason for the action can be hypothesized." *Id.* at 634. (citations omitted). In stating such, the Seventh Circuit sanctioned the disposal of class-of-one claims in Rule 12(b)(6) motions "[s]ince hypothesis is not proof, this test that we have articulated can often be applied in advance of discovery. *Id.* (citations omitted).

Recognizing the theoretical and practical problems associated with the equal protection class-of-one claim, the Supreme Court addressed the class-of-one theory in the public employer context. *See Enquist v. Oregon Dep't of Agriculture*, 128 S.Ct. 2146 (U.S. 2008). In *Enquist*, the Supreme Court reasoned that *Olech* was more an application of the Equal Protection Clause's guarantee of freedom from arbitrary government classification than an exception to the requirement for suspect classification. *See Enquist*, 128 S.Ct. at 2153. The Supreme Court held that the core concerns of the Equal Protection Clause are not implicated in disputes inherently circumscribed by the discretionary

exercise of the state's authority to fire an employee. *Id.* at 2153-57 (holding the class-of-one theory does not apply in the public employment context). The reasoning in *Enquist* fully applies to eliminate the application of the class-of-one theory to the traffic stop/arrest scenario raised in Plaintiff's complaint. Indeed, this is precisely the example the Supreme Court discussed in *Enquist* as the fundamental flaw in applying equal protection analysis to the highly contextual and discretionary decision making at issue in the arrest context. *Enquist*, 128 S.Ct. at 2154.

### A.    The Core Concerns of The Equal Protection Clause Are Not Implicated by Plaintiff's Arrest Regardless of Officer Francis's Subjective Intent

This is a dispute between a seized plaintiff and the defendant officer who seized him. (D.E. 1). Plaintiff's entire claim is a challenge to Officer Francis's seizure of him or, as the Supreme Court stated, a challenge "to the legitimacy of the underlying action itself…". *See Enquist*, 128 S.Ct. at 2154. In this regard, the core concern of the Equal Protection Clause to "shield against arbitrary classifications" in administrative and regulatory acts is not implicated. The Supreme Court makes clear that absent suspect classification the Equal Protection Clause is not concerned with the subjective, individualized determinations of state actors in their decision to exercise discretionary authority. *See Enquist*, 128 S.Ct. at 2154-55. Indeed, the Constitution envisions differential treatment in the exercise of the discretionary power to search and seize:

> [t]here are some forms of state action, however, which by their nature involve
> discretionary decisionmaking based on a vast array of subjective, individualized
> assessments. In such cases the rule that people should be "treated alike, under like
> circumstances and conditions" is not violated when one person is treated differently
> from others, because treating like individuals differently is an accepted consequence
> of the discretion granted. In such situations, allowing a challenge based on the
> arbitrary singling out of a particular person would undermine the very discretion that
> such state officials are entrusted to exercise.

*Enquist*, 128 S.Ct. at 2154 (discussing the inherent problems with equal protection analysis in discretionary decision making through illustration of a police officer issuing traffic tickets). While Plaintiff argues that Officer Francis was simply "harassing" him, he cannot escape the fact that

ultimate dispute is the legitimacy of the decision to seize and/or arrest. Because the exercise of the power to arrest is an inherently discretionary act, the equal protection class-of-one theory has no application. *See, e.g., Enquist*, 128 S.Ct. 2154-55; *see also Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994) (addressing probable cause to arrest and noting "[i]n recognition of the **_endless scenarios confronting police officers in their daily regimen_**, courts evaluate probable cause 'not on the facts as an omniscient observer would perceive them, but on the facts as they would have appeared to a reasonable person in the position of the arresting officer – seeing what he saw, hearing what he heard.'") (emphasis added) (citations omitted). The Supreme Court stated: *"**allowing an equal protection claim on a ground that a ticket [or arrest] was given to one person and not others, even if for no discernable or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized."** Enquist*, 128 S.Ct. at 2154 (emphasis added). In short, the equal protection class-of-one theory does not apply. *See also Holden v. Carey, et al.*, No. 07 C 932, Mem. Op. p. 7n.1 (N.D. Ill. Aug. 26, 2008) (J. Kendall) (recognizing that police tort cases are ill-suited to the equal protection class-of-one analysis), attached hereto as Exhibit B. But even it if did, the Court can hypothesize legitimate reasons for Plaintiff's seizure.

**B.    _Legitimate Reasons For Any Alleged Differential Treatment Can Be Hypothesized_**

Undoubtedly, this Section 1983 case is about law enforcement officers and the seizure of Plaintiff for a criminal offense, whether occasioned by a traffic violation or otherwise. To even advance his equal protection class-of-one claim into the discovery phase, Plaintiff must "negative any reasonably conceivable state of facts that could provide a rational basis for the classification … [such that] no sound reason for the action can be hypothesized [and] …the government action [is] wholly impossible to relate to legitimate government objections." *Lauth v. McCollum*, 424 F.3d 631,

634 (7th Cir. 2005) (citations omitted).  Plaintiff's entire case appears to hinge on the notion that the

Officer Francis seized him for no reason other than animosity toward him.  However, Plaintiff

cannot negative any "<u>reasonably</u> <u>conceivable</u>" state of facts that could provide a rational basis for

the complained of conduct.  The entire case presupposes that this is an exercise in the power to

enforce criminal statutes and that such exercise was unconstitutional; or better stated unreasonable.

Consequently, whatever treatment afforded to Plaintiff in comparison to the treatment afforded to

others may at the very least be "hypothesized" to be rationally related to the legitimate state interest

in enforcing traffic and/or criminal laws.  *See McCollum*, 424 F.3d at 634 (a class-of-one claim fails

unless it can "negative any reasonably conceivable state of facts that could provide a rational basis

for the classification.") (citations and internal quotations omitted).  Therefore, Plaintiff's class-of-one

claim fails as a matter of law and must be dismissed.

### C.    *Plaintiff's Class-of-One Claim Creates Untenable Practical Problems*

A chief concern addressed in *Enquist* was the "practical problem" associated with litigating

class-of-one claims over inherently discretionary decision making.  *See Enquist*, 128 S.Ct. at 2157.

The Supreme Court stated:

> The practical problem with allowing class-of-one claims to go forward in this context
> is not that it will be too easy for plaintiff's to prevail, but that governments will be
> forced to defend a multitude of such claims in the first place, and courts will be
> obliged to sort through them in a search for the proverbial needle in a haystack.

*Id.*

Plaintiff's challenge to the alleged difference in treatment lacks any "clear standard" at all to which

the state action may be compared.  Instead, it simply states "[t]he Defendant Francis does not treat

similarly situated motorists or taxi drivers with the same animus." (D.E. 1, ¶ 33).  Plaintiff argues

that "the plaintiff was singled out from all other cab drivers for this abuse, and as a class of one the

plaintiff is vulnerable to the whims of the defendant." (D.E. 19, p. 2).  However, in order to decide

Plaintiff's class-of-one claim, the Court would be required to determine who is similarly situated to

the Plaintiff.  In theory, this would entail analysis of every single motorist or taxi driver ever seized, ticketed or arrested by Officer Francis in his entire history with the Chicago Police Department. Thus, the Court (or likely the jury) would certainly have to parse through every traffic stop, ticket and/or arrest to find the "proverbial needle in the haystack".[1]   Additionally, the Court would have to determine if any purported similarly situated persons also were the victim of "animus" from Officer Francis but did not receive similar treatment (mistreatment) as Plaintiff.  Thus, the Court would have to parse through the interaction not only between Officer Francis and the Plaintiff but every single individual ever stopped, ticketed or arrested by Officer Francis.  Then, the Court would have to decide whether or not there are sufficiently similar circumstances in those stops to those in this case.  Then, the Court must compare the action of Officer Francis toward the Plaintiff to the similar interaction between the Officer Francis and the similarly situated person(s) to determine whether or not there are differences in the treatment.  Finally, the Court must determine whether those differences in treatment were arbitrary and wholly lacking in any legitimate governmental interest.  This is precisely what the Supreme Court stated should not be the business of the Equal Protection Clause when it discussed the hypothetical traffic stop in *Enquist*.  *See Enquist*, 128 S.Ct. at 2154.

### D.    Plaintiff Claims Should Be Brought Under The Most Applicable Provision; the Fourth Amendment

Attaching the additional constitutional label of equal protection affords Plaintiff no greater relief than what may be provided to him in analyzing the issue under the Fourth Amendment.  The reasonableness of the seizure will be guided by the dictates of the standards set forth by probable cause and the objective reasonableness of the force used, if any.  The case need not be bogged down by senseless discovery into the various traffic stops conducted by Officer Francis where the result

---

[1] Because Plaintiff's equal protection claim is predicated upon the circumstances of the seizure, any factual disputes related to the seizure would necessarily have to be determined by the trier of fact.

would still turn on the same analysis: whether the seizure of Plaintiff was reasonable. "[C]onstitutional claims must be addressed under the most applicable provision." *Conyers v Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (*citing Graham v. Connor*, 490 U.S. 386 (1989)). Attaching additional constitutional labels to what is otherwise a search and seizure claim affords Plaintiff no greater relief and the *Connor* principle of applying the most applicable constitutional provision should be applied.

## III.  COUNT VII FAILS BECAUSE CITY EMPLOYEES ARE NOT LIABLE FOR MERE NEGLIGENT ACTS AND ILLINOIS LAW DOES NOT RECOGNIZE A STAND ALONE CLAIM FOR WILLFUL AND WANTON CONDUCT

Plaintiff misconstrues the City's arguments as to why Count VII fails and fails to discuss *Ziarko v. Soo Line R.R.*, 161 Ill. 2d 267, 641 N.E.2d 402, 406 (Ill. 1994) ("[t]here is no separate and independent tort of 'willful and wanton' misconduct") (citations omitted) or *Sparks v. Sparks*, 367 Ill.App.3d 834, 856 N.E.2d 575, 578-79 (Ill. App. Ct. 2006) (1st Dist.) (holding no independent tort of willful and wanton misconduct). Instead, Plaintiff argues that Illinois law recognizes negligence (hardly a disputed issue) and that "wilfull and wanton misconduct is just a form of negligence and requires the same elements." (D.E. 19, p. 1). Plaintiff argues in his reply that Count VII is a cause of action for negligence in the form of willful and wanton misconduct. *Id.* Plaintiff is pleading what amounts to a tort claim against Officer Francis, who is therefore entitled to protection by the Illinois Tort Immunity Act, specifically 745 ILCS 10/2-202 ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."). Although 745 ILCS 10/2-202 denies immunity for willful and wanton actions, Plaintiff's mere use of the words "willful and wanton" does not automatically state a cause of action. *See Loftus v. Mingo*, 158 Ill.App.3d 733, 740 (Ill. App. Ct. 1987) (4th Dist.). "Willful and wanton misconduct must be manifested by the facts alleged in the complaint, and mere conclusory allegations or the mere characterization of certain acts as willful and wanton misconduct are insufficient to withstand a motion to dismiss." *Id.* "At a minimum, a complaint must contain facts

9

sufficient to state a claim as a matter of law." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). The court is not obliged to accept as true legal conclusions or unsupported conclusions of fact. *See Hickey v. O'Bannon* 287 F.3d 656, 657 -658 (7th Cir. 2002).

Plaintiff alleges that Officer Francis did not allow Plaintiff to take his personal belongings from his taxi cab. (D.E. 1, ¶ 13). He alleges that the car was left running, but later alleges that the Defendant refused to return Plaintiff's keys. (D.E. 1, ¶¶ 13-15). Plaintiff also alleges that because the car was left unsecured and on the street that his money and cell phone were missing. (D.E. 1, ¶¶ 16-17). Plaintiff concludes that these actions were done willful and wantonly to sustain this negligence action. (D.E. 1, ¶¶ 47-48). These factual assertions, despite being worded with the words "willful and wanton" simply argue for a stand alone claim of wilful and wanton misconduct without being couched in support for any underlying violation of a right. Plaintiff offers no support for the contention that there is a duty to secure his taxi. If Plaintiff's allegations are only conclusions of fact and mere characterizations of acts as willful and wanton, the claim will not suffice. This is precisely what Plaintiff in the instant case has done. Because Plaintiff has only stated a claim for wilful and wanton misconduct, and he has not stated a claim and Count VII should be dismissed.

## IV.  PLAINTIFF'S PUNITIVE DAMAGES CLAIMS DO NOT SURVIVE

Plaintiff argues his claim for punitive damages survives Officer Francis's death and relies on *Penberthy v. Price*, 281 Ill. App. 3d 16, 20-22, 666 N.E.2d 352, 355-57 (Ill. App. Ct. 1996) (5th App. Dist.). Plaintiff does not discuss either case cited by the City and fails to adequately discuss the reasoning employed by the court in *Penberthy*, the factual differences in the posture of the present case and the case in *Penberthy* or the policy implication raised by survival of punitive damages in that case and this case. Instead, Plaintiff nakedly and without any support or reasoning whatsoever states the public policy considerations in *Penberthy* are stronger in this case and "[i]n fact the potential for widespread abuse and injury is far greater in the context of rogue police than injury at the hands of a

drunk driver." (D.E. 19, p. 3). The analogy between those injured at the hands of drunk drivers and taxi drivers ticketed or arrested by police officers is dubious at best.

Plaintiff's use of Penberthy for the proposition that punitive damages are allowed where there is a public policy argument that can be made against the alleged conduct is misleading. In *Penberthy*, the appellate court upheld a punitive damages verdict against the estate of a deceased tortfeasor as an exception to the general rule that punitive damages do not survive. *Penberthy*, 666 N.E. 2d at 356-57. The decedent had been driving while intoxicated and died in the car accident from which the lawsuit arose. *Id.* at 353. The Court found that Illinois law had two exceptions to the general proposition that punitive damages are not recoverable under the survival statute: (1) where a statutory basis existed or when punitive damages are an integral part of a regulatory scheme, and (2) "when strong equitable considerations favor survival." *Id.* at 355-56 (discussing the Illinois Supreme Court's interpretation of the survival statute). The court articulated the following factors as relevant to whether strong equitable considerations favored survival: "whether the defendant's alleged conduct offends against a strong and clearly articulated public policy; whether the underlying conduct constituted intentional misconduct which is also a crime, instead of mere wilful and wanton conduct which shades into simple negligence; and whether absent an award of punitive damages, a plaintiff who prevailed on the merits of his or her own claim would at most be entitled to only a comparatively small recovery." *Id.* at 356 (citations omitted). The appellate court found no statutory basis for survival, hence the first exception did not apply, but did find that the second exception (a strong public policy) favored survival in that case. *Id.* The court found that the deceased tortfeasor's conduct "driving under the influence of alcohol, unquestionably offends against a strong and clearly articulated public policy." *Id.* The court set forth further policy considerations in the fact that "the underlying conduct is also a crime." *Id.* While recognizing the policy justifications in punishing persons failed because of the death of the actual tortfeasor, the court nonetheless held to

allow punitive damages to survive the death of the tortfeasor as a deterrent to others "particularly in view of the strong public policy against mixing alcohol and automobiles." *Id.* at 357.

Initially, *Penberthy* is not controlling Illinois precedent and Plaintiff offers no reasoning for the court to decline to adopt the holdings in the cases cited by the City, *Stafford v. Purofied Down Products Corp.*, 801 F. Supp. 130, 132 (N.D. Ill. 1992) (J. Norgle) and *Ingram v. Hall Roach, Johnston, Fisher, Bollman*, No. 95 C 0550, 1995 WL 765331, *1, 5 (N.D. Ill. Dec. 27, 1995) (J. Holderman). But even if *Penberthy* were to apply, its holding is not an automatic win for Plaintiff. The Court must apply the factors to determine whether or not survival is appropriate. Here, the *Penberthy* factors do not justify survival. To the contrary, there are substantial policy reasons for holding that punitive damages do not survive against deceased police officers. First, while there is doubtless a strong public policy in favor of constraining police officers' exercise of power, that policy is balanced by society's interest in law enforcement. Indeed, this is the balance which all Fourth Amendment jurisprudence must reach. Thus, unlike drinking and driving where no legitimacy in the act can be discerned, the issues raised by Plaintiff's complaint as to Officer Francis's conduct are inherently circumscribed by a lens of overarching legitimacy in that Officer Francis is being sued for actions taken as a police officer. Further, in *Penberthy* the act for which survival was held to apply was a criminal act. That is clearly not the case here. Instead, the plaintiff's allegations are more akin to "willful and wanton conduct that shades into simple negligence," which Illinois law deems insufficient to uphold survival of punitive damages claims. *See Penberthy*, 666 N.E. 2d at 356. Additionally, the comparatively small recovery issue is not present in this case; indeed the converse may be true as it may ultimately fall on Officer Francis's family should punitive damages survive. Finally, the policy ramifications in holding an officer's family financially accountable for actions done under color of law, in the course and scope of his employment as a police officer, and most

importantly, where that officer is no longer alive to confront the plaintiff and defend his actions weigh in favor of holding that a punitive damages claim does not survive.

## CONCLUSION

For the reasons stated herein and in its motion and memorandum to dismiss, Defendant City of Chicago prays this Court dismiss Counts III ("Violation of Property Rights"), IV ("Equal Protection") Count VII (untitled), and all claims for punitive damages with prejudice, require Plaintiff to submit an Amended Complaint reflecting the dismissal of those claims, and grant whatever other relief the Court deems just and proper.


DATED:  September 5, 2008

                          Respectfully submitted,

                          City of Chicago

                          Mara S. Georges
                          Corporation Counsel

                          By:  /s/ Christopher A. Wallace
                                 Christopher A. Wallace
                          Assistant Corporation Counsel
                           Attorney for Defendant City of Chicago

                          City of Chicago Department of Law
                          30 N. LaSalle Street
                          Suite 1400
                          Chicago, Illinois 60602
                          T: (312) 742-6408
                          F: (312) 744-6566
                          ARDC # 6278655

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher Wallace, hereby certify that on September 5, 2008, I served a true and correct copy of Defendant City of Chicago's Reply by filing the same before the Court via the ECF system.

<u>/s/ Christopher Wallace</u>
Christopher Wallace

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                              Page 2
Not Reported in F.Supp.2d, 2001 WL 290416 (N.D.Ill.)

■O'Hara v. O'Donnell
N.D.Ill.,2001.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Eddie O'HARA, Plaintiff,
v.
Paul O'DONNELL, Anthony Liace, and Ronald
Caliendo, Defendants.
No. 98 C 0979.

March 21, 2001.

MEMORANDUM OPINION AND ORDER

DARRAH, District J.

*1 Plaintiff, Eddie O'Hara, filed suit, *pro se,* against defendants, Paul O'Donnell (O'Donnell), Anthony Liace (Liace), and Ronald Caliendo (Caliendo), alleging racial defamation, assault, false incarceration, theft, destruction and/or loss of property and violation of his IV, V, and VI rights under the United States Constitution. Before the Court is defendants' Motion to Dismiss Portions of Plaintiff's Amended Complaint and plaintiff's response to the motion, Motion to Deny Dismissal.[FN1]

> **FN1.** Plaintiff filed his response *pro se.* Plaintiff has proceeded *pro se* since September 10, 1999, after the court granted plaintiff's third court-appointed counsel's Motion to Withdraw.

In ruling on a motion to dismiss, the Court must accept the events as specified in the complaint as true, and all ambiguities are construed in favor of the plaintiffs. *Curtis v. Bembeneck,* 48 F.3d 281, 283 (7th Cir.1995). Federal notice pleading requires that a plaintiff "set out in [the] complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim."*Scott v. City of Chicago,* 195 F.3d 950, 951 (7th Cir.1999). When a complaint is prepared by a *pro se* litigant, the complaint may be dismissed for failure to state a claim only when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."*Haines v.*

*Kerner,* 404 U.S. 519, 521 (1972).

Plaintiff's complaint alleges that he was arrested at the corner of Michigan and Ontario in Chicago, Illinois. At the time of his arrest, O'Donnell, Liace, and Caliendo, Chicago Police Officers, refered to plaintiff as a "nigger". O'Donnell took plaintiff's wallet that contained personal papers and two $100 bills. At the police station, O'Donnell struck plaintiff's head against a steel door, and Liace also struck plaintiff. When plaintiff asked for the return of his money, Liace showed plaintiff a $100 bill and stated, "You ain't going to get this money back, nigger."Also at the police station, Caliendo ordered plaintiff to sign a piece of paper but refused to let plaintiff read the piece of paper. Caliendo told plaintiff that he was never going to see his personal property "by the time [he] got through with it."Caliendo filed charges of disorderly conduct against plaintiff. On the scheduled day of trial, April 29, 1998, the charges against plaintiff were non-suited.[FN2]Military records and personal property that were in plaintiff's wallet were never returned to him.

> **FN2.** Courts are permitted to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *General Electric Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080-81 (7th Cir.1997). Judicial notice is taken of the transcript of the proceedings of plaintiff's criminal prosecution for purposes of the present motion to dismiss.

First, defendants argue that plaintiff is barred from pursuing any federal claims for the alleged deprivation of property because adequate state remedies exist. If a deprivation is the result of a random and unauthorized act such that a pre-deprivation hearing would not be feasible and the state provides an adequate post-deprivation remedy, the Due Process Clause of the Fourteenth Amendment has not been violated. *Parrat v. Taylor,* 451 U.S. 527, 541-43 (1981), overruled on other grounds*Daniels v. Williams,* 474 U.S. 327 (1986). A state official's conduct can be classified as random and unauthorized when he or she departs from

Not Reported in F.Supp.2d                    FOR EDUCATIONAL USE ONLY                                      Page 3
Not Reported in F.Supp.2d, 2001 WL 290416 (N.D.Ill.)

established state procedure. _Easter House v. Felder,_ 910 F.2d 1387, 1401 (7th Cir.1990).

**\*2** Here, the alleged conduct of the defendants is unauthorized and random. Furthermore, Illinois provides a remedy for the tort of conversion (705 ILCS 505/8(d)), of which plaintiff's allegation of deprivation of personal property would properly fall. Therefore, any claim under 42 U.S.C. § 1983 that premised on deprivation of personal property cannot stand. _See Bullock v. Barham,_ 957 F.Supp. 154, 157 (N.D.Ill.1997).

Defendants also argue that plaintiff's claims that his Fifth and Sixth Amendment rights were violated are not actionable because plaintiff has failed to allege any facts that would implicate either the Fifth or Sixth Amendment.

Plaintiff's complaint, nor his response to the motion for a more definite statement, does not specify which clause of the Fifth Amendment the defendants allegedly violated. Drawing all reasonable inferences from plaintiff's complaint, the Court concludes that plaintiff's Fifth Amendment claim is based on an alleged violation of plaintiff's Due Process rights under the Fifth Amendment. Plaintiff's complaint makes no allegations that the defendants violated plaintiff's right against double jeopardy. Furthermore, there are no allegations that plaintiff was compelled to be a witness against himself at his trial or that his statements were used against him at such trial because the plaintiff did not stand trial. Therefore, plaintiff's only basis for alleging that defendants violated his Fifth Amendment right is based on a Due Process violation. However, the Due Process Clause of the Fifth Amendment only applies to federal officials. _LaBoy v. Zuley,_ 747 F.Supp. 1284, 1286 (N.D.Ill.1990); _Johnson v. Carroll,_ 694 F.Supp. 500, 503 (N.D.Ill.1988). Defendants are not federal officials. Therefore, plaintiff's Fifth Amendment claim is dismissed.

Plaintiff's complaint also fails to specify which clause of the Sixth Amendment defendants allegedly violated. The Sixth Amendment protects a person's right to counsel, right to be informed of the nature and cause of the accusation, right to a speedy trial, right to compulsory process, and right to a trial by jury. U.S. Const. amend. XI. Drawing all reasonable inferences from plaintiff's complaint and his response

for a more definite statement, the Court is unable to discern anything that supports an allegation of claim within the Sixth Amendment. Therefore, plaintiff's Sixth Amendment claim is dismissed.

Defendants also argue that plaintiff's claims regarding the use of racial epithets are not actionable. Plaintiff uses the term "racial defamation" and cites to racial epithets in his complaint. "The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution."_DeWalt v. Carter,_ 224 F.3d 607, 612 (7th Cir.2000). Therefore, any claims that defendants violated plaintiff's constitutional rights based on the racial epithets allegedly made toward him are dismissed.

Last, defendants argue that plaintiff's claims for malicious prosecution should be dismissed because plaintiff cannot satisfy the state law claim for malicious prosecution. "[T]he only constitutional amendment that is implicated by a malicious prosecution claim is the Fourth Amendment."_Washington v. Summerville,_ 127 F.3d 552, 559 (7th Cir.1997)(_Washington_ ), citing _Albright v. Oliver,_ 510 U.S. 266, 271 (1994). To state a claim for malicious prosecution under § 1983, a plaintiff must establish that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of a liberty. _Washington,_ 127 F.3d at 558. Under Illinois law, a plaintiff must allege: (1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendant's instituted or continued the proceedings maliciously; (4) the proceedings were terminated in plaintiff's favor; and (5) there was an injury. _Reed v. City of Chicago,_ 77 F.3d 1049, 1051 (7th Cir.1996).

**\*3** In the present case defendants argue that plaintiff's proceedings were not terminated in his favor because the charge was non-suited due to the attorney not being available to go to trial on the date of trial. The plaintiff has the burden of proving a favorable termination. _Washington,_ 127 F.3d at 557. This burden is met only when the plaintiff establishes that termination of the charge was entered for reasons consistent with his innocence. _See Washington,_ 127 F.3d at 557. "The circumstances surrounding the cessation of the criminal proceedings must compel an

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 4
Not Reported in F.Supp.2d, 2001 WL 290416 (N.D.Ill.)

inference that reasonable grounds to pursue the criminal prosecution were lacking." *Washington, 127 F.3d at 557.*

Here, defendants allege the transcript of the dismissal of plaintiff's criminal charge prove that the charge was not terminated in plaintiff's favor. The Court may take judicial notice of the trial transcript without converting the motion to dismiss into a motion for summary judgment. *General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir.1997)*(*General Electric* ). This exception to Federal Rule of Civil Procedure 12(b) allows a court to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy 12(b)(6).*General Electric, 128 F.3d at 1081.* The transcript of the dismissal of plaintiff's criminal charge contains undisputed facts in a public record that relate to the dismissal of plaintiff's criminal charge on the day it was dismissed that support defendants' argument. However, the transcript also indicates the trial was continued for several reasons and that plaintiff wished to proceed with trial. The transcript, by itself, does not establish the undisputed fact that plaintiff's charge was not terminated in plaintiff's favor. Therefore, as argued by defendants, defendants' Motion to Dismiss would be converted into a Motion for Summary Judgment in which plaintiff must be allowed to present material pertinent to the motion under Rule 56. Accordingly, defendants' Motion to Dismiss plaintiff's malicious prosecution claim is denied.

For the foregoing reasons, plaintiff's claims for deprivation of property, violation of plaintiff's Fifth and Sixth Amendment rights, and violation of constitutional rights from racial epithets are dismissed. Plaintiff's Motion to Deny Dismissal is denied.

N.D.Ill.,2001.
O'Hara v. O'Donnell
Not Reported in F.Supp.2d, 2001 WL 290416 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MACEO HOLDEN, | ) | |
| | ) | |
| Plaintiff , | ) | Case No. 07 C 932 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| OFFICER A. CAREY, OFFICER M. WALSH, | ) | |
| OFFICER C. EVANS, SGT. W. KELLY #1624, | ) | |
| OFFICER FILLIPO, and the CITY OF | ) | |
| CHICAGO | ) | |
| | ) | |
| Defendant . | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maceo Holden ("Holden") brought suit against Chicago police offers A. Carey ("Carey"), M. Walsh ("Walsh"), C. Evans ("Evans"), and Fillipo, Sergeant W. Kelly ("Kelly") and the City of Chicago ("City") alleging excessive force, false arrest and conspiracy under 18 U.S.C. § 1983, violation of Equal Protection, and *Monell* and indemnification claims against the City. Carey, Walsh, Kelly, and Fillippo (collectively the "individual defendants") now bring a Motion for Summary Judgment as to all claims against Kelly and Fillipo and Count IV, Holden's Class of One Equal Protection claim, as against all Defendants.  Holden conceded summary judgment in favor of Kelly and Fillippo, and thus the Court limits this Opinion to discussion of Holden's Equal Protection claim.

1

## STATEMENT OF FACTS

Holden was arrested on February 18, 2005 and charged with unlawful use of a weapon in violation of Chapter 720 Section 5/24-1(a)(10) of the Illinois Criminal Code of 1961.  Def. 56.1 at ¶ 5.  The charge was related to a loaded .357 magnum pistol recovered in relation to his arrest.  *Id*.

According to Holden,  he was frightened when a male police officer pulled up behind him in a police car while he was urinating in an alley and yelled a racial epithet at him.  *Id*. at ¶ 6.  He ran, scaled two gates, ran through a gangway and jumped onto Pulaski Avenue where he surrendered to two male police officers who arrived in a second marked police car.  *Id*. at ¶¶ 6-7.  One of the two arresting officers grabbed Holden's leg and "snapped it in half," making an audible noise, while Holden was lying on the sidewalk. *Id*. at ¶ 8.  The officer then threw him into the open door of the police car, slammed the car door against his head several times and punched his injured leg and eye.  *Id*.  One of the arresting officers then told him he could walk and that he was not going to be transported to the hospital.  Pl. 56.1 at ¶ 8.  The officers, however, agreed to transport him to the police station but not before stopping in an alley where one of the officers stated that he wanted to kill him.  *Id*. at ¶¶ 9-10.  At the suggestion of the other officer, however, the two decided to falsely accuse him of a robbery.  *Id*. at ¶ 12.

According to Officers Carey and Walsh, they were patrolling in an alley where they observed Holden crouching between two cars acting suspiciously.  *Id*. at ¶ 16.  When they approached, Holden fled, climbing to the top of a fence, onto a gate and then into a gangway.  *Id*. at ¶¶ 16, 19.  He then fled from the gangway.  *Id*. at ¶ 20.  Officers Brzezick and Daly arrived in a second marked police car, apprehended Holden and transported him to the police station.  *Id*. at ¶¶ 21, 23.

2

Holden claims that he was treated differently than other individuals who have had interaction with police officers. Def. 56.1 at ¶ 42. However, at his deposition, he could not identify another person treated differently. *Id*. Holden, however, suggests that some of the actions taken against him and statements made by the officers to him establish differential treatment.

First, although the parties dispute whether Holden had a gun with him at the time of the incident and whether a loaded .357 magnum pistol was recovered from the gangway down which he fled, *see Id*. at ¶¶ 18, 20, 24, they agree that Officer Carey did not call an evidence technician to have the gun fingerprinted. Pl. 56.1 at ¶ 19. Her failure to do so conflicts with General Order 89-6 of the Chicago Police Department which states that absent exigent circumstances, any officer who takes a firearm into custody will, prior to handling the firearm, have it examined for fingerprints if the existence of fingerprints is pertinent to the case. *Id*. at ¶¶ 20-21. Similarly, CPD policy dictates that when force is used against an individual, a tactical response report should be filled out. Walsh did not fill out a tactical response report regarding Holden's arrest. *Id*. at ¶¶ 9-10.

Walsh testified that he has never observed a police officer doing something he or she was not supposed to do or that should be reported to a supervisor. *Id*. at ¶ 1. Walsh further testified that if he had seen any conduct that warranted reporting to a supervisor, including excessive force, arrest without probable cause, or refusal of medical assistance to an injured person in custody, he would have reported it to a superior. *Id*. at ¶¶ 1-3; 6; 11.

### **STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c).  In determining whether a genuine issue of fact exists, the Court must view the evidence

and draw all reasonable inferences in favor of the party opposing the motion.  *Bennington v.*

*Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986).  However, the Court will "limit its analysis of the facts on summary judgment

to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement."

*Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000).  Where a

proposed statement of fact is supported by the record and not adequately rebutted, the court will

accept that statement as true for purposes of summary judgment.  An adequate rebuttal requires a

citation to specific support in the record; an unsubstantiated denial is not adequate.  *See Albiero v.*

*City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134

F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion

of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete

facts establishing the existence of the truth of the matter asserted.").

## DISCUSSION

Holden argues that he suffered discrimination as a "class of one" in violation of the Equal

Protection Clause.  He asserts that he was discriminated against because the officers abused him,

did not send the allegedly recovered weapon for fingerprinting, and did not file a tactical report even

though Department regulations require that weapons be fingerprinted and officers file tactical reports

when they use force.

Generally, Equal Protection claims involve charges of singling out members of a vulnerable

group for unequal treatment or allegations that a law or policy makes irrational distinctions between

groups of people.  *See Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004) *citing Esmail v.*

*Macrane*, 53 F.3d 176, 178 (7th Cir. 1995). Plaintiffs may bring Equal Protection claims as a class of one, even though such claims are very difficult to prove. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *McDonald v. Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). To succeed, the plaintiff must prove that: 1) he was intentionally treated differently from other individuals similarly situated; and 2) there was no rational basis for the difference in treatment or the cause of the differential treatment was "totally illegitimate animus" by the defendant. *Id*.

The individual defendants argue that this case is ill-suited to Equal Protection analysis and that in any case, Holden has failed to adequately demonstrate that similarly situated individuals were treated differently. Generally, whether individuals are similarly situated is a question of fact for the jury, but courts may grant summary judgment when no reasonable jury could find that this requirement has been met. *Id*. To meet the similarly situated requirement, plaintiffs must prove "that they were treated differently than someone who is prima facie identical in all relevant respects." *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *see also Sellars v. Gary*, 453 F.3d 848, 850 (7th Cir. 2006) (plaintiff must prove that "such individuals were identical to him in all relevant respects").

Holden relies on two sets of facts in attempting to support his claim of discrimination. First, he notes that Walsh stated in deposition that: 1) he has not seen a police officer act inappropriately; 2) he has not seen a police officer do anything that should be reported to a supervisor; and 3) had he seen conduct that warranted report to a supervisor, such as excessive force or false arrest, he would have reported it. Pl. 56.1 at ¶¶ 1-3, 6, 11. Second, he relies on the mere existence of General Order 89-6, requiring the fingerprinting of guns recovered by CPD, and the fact that tactical reports are generally filled out when officers use force. Pl. 56.1 at ¶¶ 9, 20. Thus, he argues that because

Walsh claims he has not engaged in, or seen police misconduct, and because the handgun was not fingerprinted and no tactical report was filed, he was treated differently from other individuals who interacted with police officers.  Holden provides no specific information about any members of this group.

Holden's non-specific evidence is inadequate to sustain a claim of class of one discrimination.  First, class of one plaintiffs must identify specific individuals who were similarly situated and who were treated differently and they must present specific evidence of the circumstances of those individuals.  *See e.g. Bell*, 367 F.3d at 706-07 (plaintiff identified four other individuals who applied for pier-building permits in the same area and from the same authority and were granted permits without hearings); *Purze*, 286 F.3d at 455 (plaintiff identified individuals in three other developments in the same village who also requested variances from subdivision rules); *Ciechon v. Chicago*, 686 F.2d 511, 522 (7th Cir. 1982) (plaintiff identified a second paramedic who was present and at the same incident and equally responsible for patient care).  For example, in *McDonald*, the plaintiff argued that the Village of Winnetka Fire Department followed an established procedure in investigating fires that was not followed in investigating his home fire.  He presented a few fire investigation reports of other fires, none of which contained specific details and asserted essentially that he was similarly situated to every resident with a residential structural fire.  *McDonald*, 371 F.3d at 1003, 1005.   In finding the reports to be inadequate, the court noted that although they suggested that the fire department believed that it properly eliminated non-arson causes of the fires, they did not establish that the fire department actually eliminated non-arson causes.  *Id*. at 1005-08.  As such, McDonald did not show that the comparators were actually similarly situated.  *Id*. at 1005;  *see also Lerch v. Green Bay*, No. 07 C 3547, 2008 WL 822254 (7th

Cir. March 27, 2008) (plaintiff whose property was razed identified two other properties dissimilar

to his own and submitted pictures of properties he alleged to be in worse condition than his own that

were not razed without further detail). Here, Holden asserts only that a huge and amorphous group

of individuals, persons who have interacted with police officers, was treated differently than he.

Specific evidence of similarly situated individuals is necessary in class of one claims because

individuals must be compared on a very detailed level to determine if they are in fact prima facie

identical. For example, in *Bell*, the court examined the individuals that Bell argued were similarly

situated but treated differently, holding that the permit-granting authority had begun to apply more

rigorous scrutiny in 1998 and had begun emphasizing "flow-through" structures on piers; so

individuals who requested permits before 1998 and piers including flow-through structures were not

similarly situated. *Bell*, 367 F.3d at 707-08; *See also*, *Purze*, 286 F.3d at 455 (individuals who

requested Subdivision Code variances of a different kind or in different subdivisions not similarly

situated); *contra Ciechon*, 686 F.2d at 522 (plaintiff paramedic and second paramedic who

experienced identical circumstances at the same time and were equally responsible for patient care

were similarly situated). Holden fails to provide the Court with any detail of similarly situated

individuals to allow it to perform the requisite analysis.[1] For the reasons stated above, the

individual defendants' Motion for Summary Judgment is granted.

---

[1] In addition, the Court agrees that this case is ill-suited to equal protection analysis.
Indeed, every time a person commits a tort, he is treating the victim differently than he generally
treats others, but this does not establish a claim of discrimination. *McDonald*, 371 F.3d at 1009.
As such, the similarly situated requirement is necessary to avoid broadening the scope of class of
one claims such that they constitutionalize claims better framed as torts. *Id.*

The parties have failed to file their final pretrial order by the due date of August 21, 2008. The trial is set for September 2, 2008 and the parties must file the final pretrial order immediately or risk being sanctioned for their failure to follow this Court's pretrial order.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 26, 2008