IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BEHROUZ KAHLILY, | ) | |
| | ) | Case No. 08 C 1515 |
| Plaintiff, | ) | |
| | ) | Judge Virginia M. Kendall |
| v. | ) | |
| | ) | |
| DEBORAH FRANCIS,[1] Special Administrator of the Estate of Richard Francis and CITY OF CHICAGO, an Illinois Municipal Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant City of Chicago ("Chicago") moves this Court to dismiss Counts III, IV and VII of Plaintiff Behrouz Kahlily's ("Kahlily") Complaint. Additionally, Chicago has moved to dismiss all claims for punitive damages against deceased former Defendant Richard Francis ("Francis"). For the reasons stated, Chicago's Motion to Dismiss is granted with respect to Counts III and IV and denied with respect to Count VII. Additionally, Kahlily's demands for punitive damages are dismissed in the surviving counts.

## PLAINTIFF'S ALLEGATIONS

Kahlily, a 59 year-old resident of Chicago, works as a self-employed taxi driver. (Compl. ¶ 1.) On April 11, 2007, Chicago Police Officer Francis pulled over Kahlily's taxi even though Kahlily had not committed a traffic offense or a crime. (Compl. ¶¶ 5, 7-8.) Kahlily recognized Francis as a police officer who had repeatedly harassed him by issuing traffic citations without

[1] Kahlily's Complaint names Richard Francis as a Defendant. Richard Francis passed away on July 2, 2008. On Nov. 11, 2008, this Court granted Chicago's Motion to Substitute Party and substituted Deborah Francis, Special Administrator of the Estate of Richard Francis, as a defendant in this action.

probable cause. (Compl. ¶ 9.) Because Kahlily kept his driver's license inside of a handbag in the car's trunk, Kahlily stepped out of the taxi and walked with Francis towards the trunk. (Compl. ¶ 11.) On the way, Kahlily asked why he had been pulled over and why Francis always harassed him. (*Id.*) In response, Francis handcuffed Kahlily and placed him into the police car. (Compl. ¶ 12.) Francis did not permit Kahlily to retrieve his belongings from the taxi or secure the car. (Compl. ¶ 13.) As a result, Kahlily left the taxi unlocked and running in the middle of the street with his cell phone, keys and money inside. (*Id.*)

After Francis transported Kahlily to the Chicago Police Department's 19th District Station, he handcuffed Kahlily to a wall and issued citations for traffic violations. (Compl. ¶ 14.) After he was released from the police station, Kahlily returned to his taxi to discover that someone had stolen his money and his cell phone from the unsecured vehicle. (Compl. ¶ 17.)

On July 2, 2008, Francis was killed in the line of duty. His death was spread of record on July 9, 2008. (D.E. 13.)

Kahlily sued Francis for excessive force, false arrest, violation of property rights and violation of his equal protection rights in violation of 42 U.S.C. § 1983. He also brought supplemental state law claims against Francis for intentional infliction of emotional distress, battery, and for willful and wanton conduct. In his prayers for relief for each count, Kahlily asked for punitive damages against Francis. He joined state law claims against Chicago for *respondeat superior* liability and indemnification. Chicago now moves to dismiss Kahlily's claims for violation of property rights (Count III), violation of his equal protection rights (Count IV) and for willful and wanton conduct (Count VII). Additionally, the City seeks to dismiss all claims for punitive damages against Francis.

## STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not allege all facts involved in the claim. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). However, in order to survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Such a set of facts must "raise a reasonable expectation that discovery will reveal evidence" of illegality. *Id.* at 1965.

## DISCUSSION

### I. Section 1983 Claims

A plaintiff may bring an action under 42 U.S.C. § 1983 to redress constitutional violations committed under color of state law. *See* 42 U.S.C. § 1983. To state a valid claim for relief under § 1983, plaintiffs must allege: 1) the deprivation of a right secured by the Constitution or laws of the United States; and 2) that a person was acting under color of state law when he caused the deprivation. *See McKinney v. Duplain*, 463 F.3d 679, 683 (7th Cir. 2006). The parties do not dispute that Francis acted under color of state law when he arrested the Plaintiff. Therefore, this Court begins its analysis by determining whether Kahlily has properly alleged that Francis violated his constitutional rights.

*a. Count III - "Violation of Property Rights"*

In Count III of his Complaint, Kahlily claims that Francis violated his Fifth and Fourteenth Amendment property rights by causing "the loss or destruction of [his] property without just compensation." (Compl. ¶ 28.) To support this claim, Kahlily alleges that Francis either: 1) stole the money and cell phone from Kahlily's taxi; or 2) allowed someone else to steal the property by forcing Kahlily to leave the taxi unsecured in the middle of the road. (*Id.*)

Initially, Kahlily cannot state a claim under the Takings Clause of the Fifth Amendment because the Fifth Amendment requires the government to pay a property owner just compensation when it takes private property for *public* use. *See* U.S. Const. amend. V; *Rockstead v. City of Crystal Lake*, 486 F.3d 963, 965 (7th Cir. 2007). Here, Kahlily never claims that the money and cell phone were placed into public use; instead, the Complaint merely alleges that someone, either Francis or an unidentified person, stole Kahlily's cell phone and money. The allegation itself implies that whoever took the property from the taxi has placed the items in private use, rather than public use. When a state executes the taking of private property for the private use of another person, the appropriate analysis is under the Due Process Clause of the Fourteenth Amendment–not the Takings Clause. *See Missouri Pac. Ry. Co. v. State of Nebraska*, 164 U.S. 403, 417 (1986) ("The taking by a state of the private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the fourteenth article of amendment to the constitution of the United States."). Therefore, the allegations of Count III pertaining to the Fifth Amendment are dismissed. Instead, the property claim must be analyzed as a procedural due process claim under the Fourteenth Amendment.

In order to state a violation under the Fourteenth Amendment, a plaintiff must allege that he was deprived of a protected interest without sufficient procedural protections. *See Color v.*

*Schneider*, 899 F.2d 660, 666 (7th Cir. 1990). As such, the issue becomes whether the plaintiff can state a claim for his lost property based on the lack of procedure available to him to recover it. Even if the Court were to take as true the allegation that Officer Francis stole the money and phone, the state's obligation to protect against such misconduct extends solely to its obligation to provide a remedy when such misconduct occurs. *See Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008). This is because when a state official commits "random and unauthorized acts," his unforeseeable misconduct breaks the requirements of existing law. *See id.*; *Vukadinovich v. Zentz*, 995 F.2d 750, 755 (7th Cir. 1993) (analyzing accusation that police officer stole $500 from detainee's wallet as a random and unauthorized act). Since the state cannot anticipate the conduct and provide a pre-deprivation hearing due to the unpredictable nature of the conduct, the state must provide an adequate post-conduct remedy. *See Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). If state law remedies exist to remedy random and unauthorized conduct, before bringing a federal claim, the plaintiff must either seek redress through those state remedies or show the inadequacy of available remedies. *See Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996); *see also Daniels v. Williams*, 474 U.S. 327, 339-40 (1986) (Stevens, J., concurring) ("[A] complaint does not state a valid procedural due process objection–and a valid § 1983 claim–if it does not include a challenge to the fundamental fairness of the state's procedures . . . . [I]f a procedural due process claim lacks a colorable objection to the validity of the State's procedures, no constitutional violation has been alleged."). Federal courts do not reject state law remedies as inadequate unless the remedy "is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment." *Michalowicz*, 528 F.3d at 535.

Here, Kahlily's allegation that Francis stole his belongings amounts to a challenge of Francis' random and unauthorized actions. Therefore, before Kahlily can claim a due process violation, he must first exhaust the available Illinois remedies to recover the items or demonstrate the inadequacy of those remedies. Illinois law provides a remedy for the intentional tort of conversion when a person steals another person's belongings. *See* 705 ILCS 505/8(d). Kahlily makes no allegations of previously availing himself of that remedy before bringing this due process claim. In fact, his claim for conversion under Illinois law reveals that he has not *previously* availed himself of state law remedies before bringing his due process claim.

Further, he has not alleged that the remedy of a conversion cause of action in Illinois is meaningless, nor would such a claim seem viable. *See Vukadinovich*, 995 F.2d at 755 (state law claim for conversion would have provided an adequate remedy if officer stole money from detainee). Because Kahlily has not previously pursued Illinois remedies before bringing this due process claim and because he has not alleged that Illinois provides an inadequate remedy, he fails to state a due process violation for his property loss.

In the alternative, Kahlily claims that Francis violated his due process rights by leaving the taxi unsecured, thereby allowing someone else to steal the items from the taxi. This scenario fails as well because an unintended loss of property resulting from an official's negligence does not implicate the Due Process Clause. *See Daniels*, 474 U.S. at 328. As previously analyzed, even intentional actions taken by officials that cause property loss only violate due process when the state provides an inadequate remedy for the loss. *See Michalowicz,* 528 F.3d at 535. Even if Kahlily were alleging that Officer Francis intended for a third person to steal the property, when third parties take property from a scene the police have failed to secure, again there is no due process violation

unless the state failed to provide an adequate remedy for the violation. *See, e.g., Slaughter v. Anderson*, 673 F.Supp. 929, 929-30 (N.D. Ill. 1987 (Shadur, J.) (officers who left apartment unsecured after arrest of suspect, even if intentional, did not violation due process since Illinois provided adequate remedy).

Because Kahlily has failed to state a claim for violation of his due process rights under any of the theories advanced in his Complaint, Count III is dismissed.

*b. Count IV - Equal Protection*

Count IV of Kahlily's Complaint claims that Francis' treatment of him violated the Equal Protection Clause of the Fourteenth Amendment. Specifically, Kahlily claims that his membership in a "class of one" made him "vulnerable to the whims and harassment of the Defendant Francis."

Generally, Equal Protection claims involve charges of singling out members of a vulnerable group for unequal treatment or allegations that a law or policy makes irrational distinctions between groups of people. *See Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004) (*citing Esmail v. Macrane*, 53 F.3d 176, 178 (7th Cir. 1996)). Although rare and difficult to prove, a plaintiff may bring an Equal Protection claims as a class of one. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *McDonald v. Village Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). To succeed on such a claim, the plaintiff must prove that: 1) he was intentionally treated differently from other individuals similarly situated; and 2) there was no rational basis for the difference in treatment or the cause of the differential treatment was "totally illegitimate animus" by the defendant. *McDonald*, 371 F.3d at 1001.

These claims are difficult to prove because many forms of state action, by their nature, involve discretionary decision-making based on numerous subjective, individualized assessments

and state officials do not violate the Equal Protection Clause when they treat one person differently than others because "treating like individuals differently than others is an accepted consequence of the discretion granted." *Engquist v. Oregon Dep't of Agriculture*, — U.S. —, 128 S.Ct. 2146, 2154 (2008). Allowing class of one Equal Protection challenges in situations where officials exercise discretionary decision-making would have the effect of undermining the discretion granted to state officials. *See id.* For example, with respect to police officers giving traffic citations:

> allowing an equal protection claim on the ground that a ticket was given to one person and not others, even if for no discernable or articulable reason, would be incompatible with the discretion inherent in the challenged action. It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

*Id*; *see also Bell*, 367 F.3d at 712 (Posner, J., concurring).

Here, Kahlily claims that he belongs to a class of one because Francis did not treat other law-abiding motorists or taxi drivers the same way he treated Kahlily. Therefore, he essentially alleges that he is the sole member of a class of people that Francis pulled over without probable cause to believe that a traffic violation had been committed. Because the police cannot stop each and every vehicle that has committed a traffic violation, the police are given discretion to determine when to make a traffic stop. *See Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979); *Engquist*, 128 S.Ct. at 2154. As such, officers are given that discretion, provided that they do not make traffic stops based upon impermissible classifications such as race or sex. *See Engquist*, 128 S.Ct. at 2154; *United States v. Moore*, 543 F.3d 891, 899 (7th Cir. 2008) (in class of one Equal Protection claim, prosecutors do not abuse discretion when they bring federal charges against one co-conspirator and state charges against others unless they make decision based upon invidious criteria such as race or religion). When police make traffic stops without probable cause to believe that a traffic violation

has occurred, they implicate Fourth Amendment protections, not the Equal Protection Clause. *See Whren v. United States*, 517 U.S. 806, 810 (1996). Kahlily challenges Francis' exercise of discretion in making the traffic stop. To the extent that he claims that he belongs to a class of one because Francis decided to pull over Kahlily but no one else, he makes an argument expressly rejected in *Engquist*. Alleging that he is the sole member of a class that Francis stopped without probable cause does not state a claim under the Equal Protection Clause. The appropriate method of challenging Francis' decision to make the traffic stop is to bring a § 1983 claim for an unreasonable seizure under the Fourth Amendment, which Kahlily has done in Count II of his Complaint. Because Kahlily has failed to state a claim for violation of his Equal Protection rights, Count IV is dismissed.

*c. Count VII - Willful and Wanton Conduct*

In Count VII of his Complaint, Kahlily alleges that Francis' willful and wanton failure to secure the taxi caused him damage. In its Motion to Dismiss, Chicago claims that Illinois law does not recognize a tort for "willful and wanton misconduct."

Under Illinois law, while willful and wanton misconduct is not a separate and independent tort, it is a "hybrid between acts considered negligent and those found to be intentionally tortious." *Krivitskie v. Cramlett*, 704 N.E.2d 957, 959 (Ill. App. Ct. 1998). Because willful and wanton misconduct is essentially an aggravated form of negligence, the elements of a negligence cause of action based upon willful and wanton misconduct are duty, breach, causation and damages. *See Kirwan v. Lincolnshire-Riverwoods Fire Protections Dist.*, 811 N.E.2d 1259, 1263 (Ill. 2004). In addition to those elements, to state a negligence claim based upon willful and wanton conduct, the plaintiff also must allege either intentional or reckless willful and wanton conduct. *See id.*; *Poole v. City of Rolling Meadows*, 656 N.E.2d 768, 772 (Ill. 1995). A person engages in intentional willful

and wanton conduct when he undertakes an action with actual or deliberate intent to harm, while reckless willful and wanton conduct requires "an utter indifference to or conscious disregard for the welfare of the plaintiff." *Kirwan*, 811 N.E.2d at 1263. Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, public employees are not liable for negligence "unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202.

Here, Kahlily alleges that Francis either stole his cell phone and money from the taxi or allowed someone else to take the items by leaving the vehicle unsecured. If Kahlily's allegations that Francis stole the items from the taxi are true, then Francis engaged in intentional willful and wanton conduct because he would have taken Kahlily's belongings with an actual intent to cause property loss. Alternatively, Kahily has alleged that Francis did not allow Kahlily to turn the taxi's engine off, remove the keys from the vehicle or otherwise secure the taxi before taking him to the police station. As a result, Kahlily claims that he suffered property loss. Having belongings stolen is a foreseeable consequence of leaving an unsecured vehicle unattended roadside in a metropolitan area. As an experienced police officer, Francis would have had knowledge of the dangers that leaving running vehicles unattended can pose, such as theft of the vehicle, theft of the vehicle's contents and vandalism. If true, the allegations that Francis did not permit Kahlily to secure the taxi before leaving for the police station would show that Francis exhibited an utter indifference or conscious disregard to the known risks that he created for Kahlily's property. In Count VII, Kahlily has stated all of the elements of a negligence cause of action based upon both types of willful and wanton conduct recognized under Illinois law.[2] Therefore, based on Kahlily's allegations, the Tort

[2] In its Reply Brief, Chicago has argued that Kahlily's allegations do not allege sufficient facts to state a claim for willful and wanton conduct. However, later in the same brief, in arguing against the survivability of claims for punitive damages, Chicago concedes that "the plaintiff's allegations are more akin to 'willful and wanton conduct that shades into simple negligence' . . . ." Regardless of the inconsistent argument, the Court finds that

Immunity Act would not bar his claim. Accordingly, Chicago's Motion to Dismiss Count VII is denied.

*d. Claims for Punitive Damages*

Kahlily seeks punitive damages from Officer Francis in Counts I-IV (§ 1983 claims) and Counts V-VII (state law claims). Chicago argues that this Court should dismiss Kahlily's requests for punitive damages because Francis is now deceased.

i. Federal claims

The federal common law of damages governs the scope of punitive damages in § 1983 actions. *See Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989). In § 1983 cases, if the jury finds that the defendant engaged in conduct motivated by evil intent or callous indifference to the federally-protected rights of the plaintiff, then it may award punitive damages for the specific purpose of deterring or punishing violations of constitutional rights. *See Stachniak v. Hayes,* 989 F.2d 914, 928 (7th Cir. 1993). Punitive damage awards exist 'to punish the defendant for his outrageous conduct and to deter him and others like him from similar conduct in the future.'" *Smith v. Wade*, 461 U.S. 30, 54 (1983) (citation omitted).

Here, imposing posthumous punitive damages on Francis for federal constitutional torts would not serve two of the three purposes of punitive damages. Even if Kahlily could prove that Francis had engaged in outrageous conduct that caused a constitutional deprivation, the imposition of punitive damages cannot punish him or deter him from engaging in similar conduct in the future. Although imposing punitive damages in such situations could provide deterrence to other officers, other forms of deterrence already exist to prevent state officials from committing constitutional torts.

---

Kahlily has satisfied the pleading standard to state a claim for willful and wanton conduct.

Other principles, such as the interest in avoiding liability for compensatory damages and the devotion to public duty, operate to deter state officials from engaging in the type of conduct that can give rise to liability for punitive damages. *See Smith*, 461 U.S. at 50. Whatever incremental deterrence value imposing punitive damages on deceased defendants would have on others does not outweigh the fact that two of the major purposes for imposing punitive damages would not be served at all. Because imposing punitive damages on the estate of a deceased defendant cannot punish or deter the individual that engaged in the outrageous conduct, awarding punitive damages in such situations would not serve the overall policies behind punitive damages. Accordingly, Kahlily's claims for punitive damages on the surviving federal claims are dismissed.

ii. State law claims

Kahlily also requests punitive damages for his state law claims. Illinois law generally does not impose punitive damages on a deceased defendant. *See Penberthy v. Price*, 666 N.E.2d 352, 355 (Ill. App. Ct. 1996). Despite that general rule, claims for punitive damages survive the death of a defendant in two circumstances: 1) when the punitive damages have a statutory basis or are an integral component of a regulatory scheme; and 2) when strong equitable considerations favor survival of an action for punitive damages. *Id.* at 356. Neither party claims that punitive damages in this case have a statutory basis.

In *Penberthy*, the only Illinois case where a claim for punitive damages survived the defendant's death, the plaintiff suffered injuries arising from a serious drunk driving accident. *Id.* Because driving under the influence of alcohol violates a strong and clearly articulated public policy, and because the underlying conduct is a crime, strong equitable considerations weighed in favor of survival of the claims for punitive damages. *Id.*

Here, Kahlily's claims contain some of the factors that were present in *Penberthy*. For example, Kahlily has alleged that Francis engaged in some criminal behavior. One of Kahlily's alternative arguments is that Francis stole his belongings from the taxi, which implicates criminal conduct on the part of Francis. Additionally, a strong public policy against the abuse of police power exists in this case. However, in *Penberthy*, no public policy counter-balanced the strong public policy of preventing drunk driving. Here, the local community has a strong interest in the enforcement of its laws, and Francis acted within the scope of a law enforcement officer during his entire interaction with Kahlily. Additionally, some of Kahlily's alternatI've arguments do not rely upon criminal conduct. For example, because Kahlily does not know what happened to the items he left in his taxi, he alleges that either Francis stole them or someone else stole them from the unattended, unsecured vehicle. Enabling someone else to steal the items by not securing the taxi is the type of "willful and wanton conduct that shades into simple negligence" that would not allow for the survival of the claims for punitive damages. Finally, and most critically, the Court acknowledges the serious damages present in *Penberthy* but absent from this case. The claims in *Penberthy* arose from a severe drunk driving accident that caused the death of the defendant and serious injuries to the plaintiffs. *Id.* at 353. Here, Kahlily alleges minor property loss and minor physical injuries that occurred when Francis fastened handcuffs too tightly on his wrist. Such minor damages and the absence of a clear public policy do not create strong equitable considerations that weigh in favor of allowing the claims for punitive damages to survive in this case. Kahlily's claims for punitive damages fall under the general rule that claims for punitive damages in Illinois do not survive the death of the defendant. Accordingly, Kahlily's claims for punitive damages in Counts V-VII of his Complaint are dismissed.

## CONCLUSION AND ORDER

For the reasons stated, Chicago's Motion to Dismiss is granted in part and denied in part. The motion is granted with respect to Counts III and IV and denied with respect to Count VII. Additionally, Kahlily's claims for punitive damages against Francis are dismissed from all surviving claims.

So ordered.

Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: December 16, 2008